(No. 1029—

JOSEPH MAZE, *et al.* Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed January 28, 1925.*

ALVIN C. BOHM AND C. W. BURTON, for claimant.

OSCAR E. CARLSTROM, Attorney General; FRANK R. EAGLE-TON, Assistant Attorney General, for respondent.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

This is a suit brought by Joseph Maze and ninety-five other farmers of Madison County, Illinois, against the defendant, State of Illinois, for the aggregate sum of Seven Thousand Five Hundred Eighty-nine ($7,589.00) Dollars alleged to be due them, respectively, as shown in a bill of particulars filed, for straw burned in 1921 in pursuance with an of the Department of Agriculture of the State of Illinois.

The defendant demurred and evidence was taken by the parties; abstract, agreement and brief were filed by claimants and the case argued orally before the court by Messrs. Burton and Burton, attorneys for claimants and by Mr. Floyd E. Britton, Assistant Attorney General, on behalf of the State.

There is no dispute as to the evidence in the case, which clearly establishes the material allegations in the declaration relative to the burning of the straw by defendant, the amount burned, its value and ownership in the claimants respectively. At the same time the evidence in this case was taken, evidence in the case of William Balke and twenty-nine farmers of Madison County v. the State of Illinois, No. 26, was taken and rported with the evidence in this case. The last mentioned case being for formaldehyde bought and used by the claimants in eliminating ''flag smut'' from the territory hereinafter mentioned. The evidence is that the claimants always had a market for their straw at a price much larger than the amount claimed.

The evidence discloses and the oral argument of counsel show that, perhaps some time in the summer of 1921 it was brought to the attention and knowledge of the Department of Agriculture of Illinois, that ''Flag Smut'' was present and attacking the wheat straw of some or all of complainants. Immediately after being so notified the said Department of Agriculture sent men of proper experience into the infested districts. Meetings and consultations were had between the State's agents and the so-called ''Flag Smut'' committee and the owners of wheat in the territory infected. The Department of Agriculture determined it was necessary to quarantine the territory described in the declaration which embraced the wheat grown by claimants and others in years 1921 and 1922.

The proper notices were given by the said department, and the State entered vigorously into the work of controlling and stamping out said disease. An order was given for all wheat raisers within the territory so quarantined to burn the straw that grew upon their premises in the year 1921, except perhaps enough might be preserved with which to straw their potatoes, and that the wheat must be sprayed with formaldehyde as directed by the agents.

It appears that there was little, if any, protest against burning the straw, except, perhaps by one or two who reluctantly yielded; and all the claimants, willingly and intelligently complied with the order so given and did all in their power to aid the Department in eradicating the dangerous disease.

The State bought and paid for the formaldehyde in 1921; but in 1922 the owners of the wheat, at request of the State, bought and applied the formaldehyde, for which they have filed claims in this court, and the same allowed in another opinion filed in said No. 26 at the present term of this court. In 1922 the order was modified and the straw was not burned in that year. Subsequently the quarantine was raised, we suppose; but the evidence does not disclose that fact. Nobody ever put in any complaint of any grievance or objection to the procedure of the State in ridding the community of the said disease, and our opinion is that the Department of Agriculture acting under the statute in such case made and provided did its whole duty; and that the complainants acquiesced and greatly aided therein.

The contention of counsel for complainants is that the right of recovery in this case is governed by Paragraph 4, Section 6 of the Act to create a Court of Claims and to prescribe its powers and duties, passed and approved May 25th, 1917; in force July 1st, 1917. The paragraph is as follows: "To hear and determine all claims and demands, legal and equitable, liquidated and unliquidated, *excontractu* and *ex delicto,* which the State as a sovereign commonwealth, should in equity and good conscience discharge and pay."

On the 29th day of June, 1917, the Legislature of the State of Illinois, passed an Act known by the short title of "Plants Inspection Act of 1917", defining "insect pests and diseases"; "plants and plant products", etc., and providing for the inspection of all public or private places which might become infected with insect pests or disease, etc.; and giving the Department of Agriculture of the State power, and making it is duty to inspect all places where insect pests and diseases of plants were suspected; the power to quarantine against the spread of same; the power to declare what is a public or private nuisance in connection therewith, and the power to destroy plants or vegetables so infected; and making it the duty of the Agricultural Department to eradicate such pests and disease, etc., and making it the duty of everybody owning plants or crops infected with such insect pests or disease to diligently aid the State in the control and extermination of such insect pests and diseases as shall have been by the Department of Agriculture declared a nuisance, etc. See Secs. 1, 2, 4, 15, 16,

21 of Chap. 5, pp. 114, 117, 118, 119, Cahill's Annotated Statute, 1923.

It will be observed by reading the two acts above quoted from that they were both passed in the year 1917, and that the last act above mentioned was amended as late as 1919. We construe the statute as we find it, and in the light of legislative intent in the making thereof. It is evident to the court that in the passage of these laws for the purposes of controlling and eradicating injurious insect pests and diseases to plant life, it did not intend that the State should be liable for damages to the owners whose crops might be destroyed as public or private nuisances. Had it been the intention of the legislature to provide reimbursement for such pecuniary loss, it would have provided the method of calculating the damages and manner of paying the same, as it did in providing for the payment of diseased animals slaughtered by the State. It is entirely within the police power of the State to control or abate nuisances private or public. In the exercise of this power by public officials it is often necessary to inflict a loss upon a private individual for his own as well as the public welfare. Where the pecuniary civil interest of an individual and that of the public are in conflict the private interest must give way to that of the public.

Had there been no law governing the case at bar, these claimants would have profited as a community by combining their efforts and means in combatting and eradicating the enemy (disease) of their crops just as they have already done in a manner commendable to themselves and the State. We interpret the statute governing this case as we find it. We have no power to add to or to take from the provision and intent of the Statute. This law was passed at the same session (1917) of the legislature that enacted the law creating the Court of Claims and defining its powers and duties; and was amended in 1919 with no provision for the payment of damages as claimed in this suit. The law quoted by counsel for claimants cannot, by legislative intent, as we view it, be construed to allow such claims.

In construing both of these acts we reach the conclusion that the claimants have no right of action in this case. The demurrer is accordingly sustained and case dismissed.